UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY
_____

| | |
|---|---|
| Albert W. Florence, | Case No. 05-3619(JHR) |
|                           **Plaintiff,** | |
| -against- | |
| Board of Chosen Freeholders of the County of Burlington, et al., | |
|                           **Defendants.** | |

_____

*PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT*
*BURLINGTON'S FED.R.CIV.P. 56 CROSS-MOTION*
*FOR SUMMARY JUDGMENT & IN REPLY TO DEFENDANTS'*
*OPPOSITION TO PLAINTIFFS' SUMMARY JUDGMENT MOTION*

SUSAN CHANA LASK, ESQ.
MICHAEL V. CALABRO, ESQ.
Counsel to Plaintiff
466 Bloomfield Avenue, Suite 200
Newark, New Jersey 07107
(973) 482-1085
Drafted by Susan Chana Lask, Esq.

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| I. INTRODUCTION...................................................................................................... | 1 |
| II. ARGUMENT............................................................................................................ | 1 |

A. DEFENDANTS SUMMARY JUDGMENT MOTION & OPPOSITION MUST BE DISMISSED. IT IS NOT SUPPORTED BY AFFIDAVITS TO DISPUTE THE MATERIAL FACT THAT DEFENDANTS VIOLATE THE DEFINED CLASS ARRESTEES' FOURTH AMENDMENT RIGHTS BY STRIP SEARCHING WITHOUT FIRST ARTICULATING REASONABLE SUSPICION................................................................................ 1

B. A RULING BY A JUDGE BROWN DETERMINING STRIP SEARCHES CONSTITUTIONAL NEVER OCCURRED. DEFENDANTS' FICTIONALIZING A "RULING" MANDATES THEY PAY PLAINTIFF'S ATTORNEY FEES & COSTS PURSUANT TO FRCP 56(G)............................................................... 2

C. THIS DISTRICT HOLDS THAT REASONABLE SUSPICION MUST BE ARTICULATED BEFORE STRIP SEARCHING A NON-INDICTABLE ARRESTEE. DEFENDANTS' ADMITTED CUSTOM AND POLICY OF STRIP SEARCHING WITHOUT FIRST ARTICULATING REASONABLE SUSPICION VIOLATES FOURTH AMENDMENT RIGHTS............................. 4

    i. A FOREIGN CIRCUIT COURT OF APPEAL DECISION DOES NOT TRUMP ESTABLISHED DISTRICT COURT DECISIONS IN THIS DISTRICT.................................................................................................... 5

    ii. DEFENDANTS' CAN NOT JUSTIFY STRIP SEARCHING BECAUSE THEY WANT TO DISCOVER GANG MEMBER TATTOOS OR MRSA MEDICAL PROBLEMS. THIS DISTRICT HOLDS THAT THERE MUST BE A BALANCING OF INTERESTS BETWEEN THE NON-INDICTABLE ARRESTEE AND THE PRISON BY ARTICULATING REASONABLE SUSPICION BEFORE STRIP SEARCHING A NON-INDICTABLE................ 6

D. ELEVENTH AMENDMENT IMMUNITY DOES NOT EXIST BECAUSE DEFENDANT IS A PRIVATELY INSURED COUNTY THAT SHALL PAY ITS OWN JUDGMENT, NOT INDEMNIFIED BY THE STATE.......................... 9

E. QUALIFIED IMMUNITY DOES NOT EXIST FOR WARDEN COLE AS *DAVIS* AND ITS PROGENY ESTABLISHED SINCE 1985 THAT HIS CUSTOM & POLICY OF BLANKET STRIP SEARCHING WITHOUT REASONABLE SUSPICION IS UNCONSTITUTIONAL IN THIS DISTRICT.... 10

III. CONCLUSION............................................................................................ 11

## TABLE OF AUTHORITIES

Statutes:
42 USC §1983................................................................................................... 9,10
Fourth Amendment............................................................................................ 4
Eleventh Amendment........................................................................................ 9
FRCP 56(e)....................................................................................................... 1
FRCP 56(G)...................................................................................................... 2
3d Cir. IOP 5.7.................................................................................................. 3

Cases & Other Citations:
*Andrews v. Camden County*,
    95 F. Supp.2d 217, 229, 230 (D.N.J. 2000).......................................... 9
*Bell v. Wolfish*
    441 U.S. 520 (1979)............................................................... 6
*Christy v. Pennsylvania Tpk. Comm'n*,
    54 F.3d 1140 (3d Cir.1995).................................................... 9
*Chisolm v. McManion*,
    275 F.3d 315, 322-23 (3dCir.2001)............................................... 9
*Davis v. City of Camden*,
    657 F. Supp. 396, 399 (D.N.J. 1987)....................................... 4,5,6,8,9
*DiLoretto v. Borough of Oaklyn*,
    744 F.Supp. 610 (DNJ,1990).................................................. 5
*Ernst v. Borough of Fort Lee*,
    739 F.Supp. 220 (DNJ,1990).................................................. 5
*Fitchik v. New Jersey Transit"Rail Ops., Inc.*,
    872 F.2d 655 (3d Cir.1989).................................................... 9
*Florence v. Board of Chosen Freeholders of the Burlington County, et. al.*,
    2008 WL 800970 (DNJ, 2008)............................................... 1,4,
Gerber v. City of Burlington, et. al., Civ. No. 95-3043(unpublished,not cited)............ 2,3
*Harlow v. Fitzgerald*,
    457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982)............................ 11
*Malley v. Briggs*,
    475 U.S. 335, 341(1986)....................................................... 11
*Massaro v. United States Lines Co.*,
    198 F.Supp. 845 (D.Pa.1961)aff'd., 307 F.2d 299 (CA 3, 1962).......................... 5
*O'Brien v. Borough of Woodbury Heights*,
    679 F.Supp. 429 (D.N.J.1988)................................................ 5,11
*Owen v. City of Independence, Mo.*,
    445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980)....................................... 9
*Pane v. RCA Corp.*,
    667 F.Supp. 168, 173 (D.N.J.1987)................................................... 3
*Powell v. Barret*,
    2008 U.S. App. Lexis 18907 (11th Cir. 9/4/08)...................................... 5
*Roderique v Kovac*,
    1987 WL 17058 (DNJ)....................................................... 5
*Saldana v. Kmart Corp.*,
    260 F.3d. 228,232(3d Cir.2001)........................................... 1
*Saucier v. Katz*,
    533 U.S. 194 (2001)........................................................ 10
*Smart v. Taylor*,
    (D.N.J.,2008)................................................................ 1
*Villines v. Harris*,
    487 F.Supp. 1278 (D.C.N.J., 1980)............................................. 5

I. <u>INTRODUCTION</u>

Plaintiff relies on the Statement of Facts and arguments in its June 28, 2008 filed Brief supporting its Summary Judgment Motion, in addition to the arguments presented here. This serves as opposition and reply to Defendants' August 20, 2008 combined Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Summary Judgment Motion. Plaintiff relies on *Florence v. Board of Chosen Freeholders of the Burlington County, et. al.,* 2008 WL 800970, at 17 (DNJ, 2008) as the law of the case.

II. <u>ARGUMENT</u>

**A. DEFENDANTS SUMMARY JUDGMENT MOTION & OPPOSITION MUST BE DISMISSED. IT IS NOT SUPPORTED BY AFFIDAVITS TO DISPUTE THE MATERIAL FACT THAT DEFENDANTS VIOLATE THE DEFINED CLASS ARRESTEES' FOURTH AMENDMENT RIGHTS BY STRIP SEARCHING WITHOUT FIRST ARTICULATING REASONABLE SUSPICION.**

Pursuant to FRCP 56(e) only an **"**opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Defendants have not filed opposing affidavits made on personal knowledge. Defendants only filed an affidavit of their own counsel, Mr. DiDonato. He is not a proper affiant, he does not work at the prison facility and he does not have personal knowledge of the strip search procedures. A party opposing summary judgment must do more than rest upon mere allegations, general denials or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d. 228,232(3d Cir.2001). This case is now over 3 years old. Never did Defendants provide discovery in the form of the multitude of documents and other papers as Exhibits to Defendnats' Brief and its counsel's affidavit that their strip search policy was aimed at discovering gang members or a medical condition called MRSA. Mr. Didonato's August 19, 2008 Affidavit and all such Exhibits must be stricken as improper. Defendants' Exhibits are a sleuth of articles and other documents that are not only irrelevant, but unsupported by any credible affidavit.

1

B. **A RULING BY A JUDGE BROWN DETERMINING STRIP SEARCHES CONSTITUTIONAL NEVER OCCURRED. DEFENDANTS' FICTIONALIZING A "RULING" MANDATES THEY PAY PLAINTIFF'S ATTORNEY FEES & COSTS PURSUANT TO FRCP 56(G)**

For over three years of this litigation, Defendants' and their counsel misrepresented to Plaintiffs' counsel and two Federal Judges, Magistrate Schneider and Honorable Rodriguez, that they won a New Jersey District Court decision holding their strip search policy constitutional (Lask Cert, 9/22/08). On August 20, 2008 Defendants' revealed for the first time in their opposition to Plaintiff's summary judgment the name Gerber v. City of Burlington, et. al., Civ. No. 95-3043 as the case permitting Defendants to strip search all arrestees. Defendants certify that Gerber's March 25, 1997 Order granting summary judgment held their strip search policy was constitutional (see Defendants' Exh. D, Pacer filing 130-14, pp.2-3). That is a patent misrepresentation known to Defendants to be false as they were the actual party in Gerber, and they had the same counsel, Mr. DiDonato, in that case.

The Gerber docket reveals no decision exists (Lask Cert, 9/22/08, Exh. C) and Defendants' admit in their August 20, 2008 Brief at page 4 a decision does not exist. Defendants' claim the decision is "extant" because the transcript is unavailable. The fact is that a decision does not exist because opposition was never filed to Defendants' 1995 summary judgment motion filed in Gerber and the case settled (Last Cert.,9/22/08). It was simply a summary order disposing of a defendant that resulted not on the merits but because opposition was never filed. Oposition was never filed because the Gerber plaintiff decided to pursue another defendant and let Defendants Burlington out of the case (Last Cert.,9/22/08). Defendants deliberately omit that opposition was never filed and the reason it was never filed. Defendants mislead this court that they won a decision when they never did. The resulting summary judgment order without a decision procedurally accommodated the dismissal of Defendants under FRCP 56(e)(2): "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." It was not a summary

2

disposition on the merits. It resulted from what amounted to an inadequate way to resolve the case. The resulting order should have referenced that opposition was not filed, or at least a subsequent corrected order should have been filed. Defendants becoming opportunists of a procedural defect to mislead this Court is egregious and an insult to the Honorable Judges in this case and the legal bar at large.

In addition to fictionalizing a decision, Defendants ignore our clear law that unpublished decisions are not binding upon this Court. *Pane v. RCA Corp.,* 667 F.Supp. 168, 173 (D.N.J.1987), *aff'd ,* 868 F.2d 631 (3d Cir.1989) ( "an unpublished memorandum opinion ... does not constitute binding precedent in this circuit" ); *see also* 3d Cir. IOP 5.7 ( "Such opinions are not regarded as precedents that bind the court."). Gerber was not even unpublished, it was a docketed case without a decision that ultimately settled. It is disturbing for Defendants to argue that Gerber is precedental in face of this District's established law that it can not even be recognized (See Exh. D- Defendants' Brief, Aug. 20, 2008), no less there was no decision  In fact, Defendants' counsel confirmed his understanding of the law on September 30, 2005, three years before his present misrepresentation of Gerber, that "a non-binding district court decision does not a case make." and that if Gerber was only an order than would be insufficient: "I am pulling my file on the other case to see if I ever got an opinion or just an order." (Lask Cert. 9/22/08, Exh. B). Gerber is non-binding and "just an order". Despite Defendants' confirming their knowledge of the law 3 years ago and being the actual parties with the same counsel in Gerber, they still argue knowing the law is contrary to their position, and presented false facts to deceive this Court.

Defendants representations are so patently false and a blatant bad faith to deceive this Court and counsel for years that pursuant to FRCP 56 (g) this Court must order Defendants to pay Plaintiff's reasonable expenses, including attorney's fees, incurred as a result of their false filing. Also, the offending party or attorney may be held in contempt. Plaintiff respectfully requests an order of contempt as it has been 3 long years of obstruction and bizarre, baseless arguments

3

proffered by Defendants, which each time this Court denied their oppositions.

### C. THIS DISTRICT HOLDS THAT REASONABLE SUSPICION MUST BE ARTICULATED BEFORE STRIP SEARCHING A NON-INDICTABLE ARRESTEE. DEFENDANTS' ADMITTED CUSTOM AND POLICY OF STRIP SEARCHING WITHOUT FIRST ARTICULATING REASONABLE SUSPICION VIOLATES FOURTH AMENDMENT RIGHTS.

The issue at bar is whether Defendants violate the defined class' Fourth Amendment rights by strip searching without first articulating reasonable suspicion. This Court defined the class and its constitutional rights consistent with this District's grounded law that reasonable suspicion must first be articulated before strip searching non-indictables:

> All arrestees charged with non-indictable offenses who were processed, housed or held over at Defendant Burlington County Jail and/or Defendant Essex County Correctional Facility from March 3, 2003 to the present date who were **directed by Defendants' officers to strip naked before those officers, no matter if the officers term that procedure a " visual observation" or otherwise, without the officers first articulating a reasonable belief that those arrestees were concealing contraband, drugs or weapons."**(empahasis added). *Florence v. Board of Chosen Freeholders of the Burlington County, et. al.,* 2008 WL 800970, at 17 (DNJ, 2008)

This Court confirmed its understanding of our well grounded law that the nature of the charge determines employing the reasonable suspicion standard, to wit:

> "...the record indicates that all arrestees at the Essex Jail are subjected to the same intake procedures **without regard to the nature of their charged offense**.[10] (See Pl. Exh. O,13:23-14:11, 34:6-16; Pl. Exh. P,9:21-10:1; Pl. Exh. Q, 22:11-20, 32:13-19.)" and Footnote 10 "the Court notes that there is similarly testimony in the record indicating that all arrestees at the Burlington Jail– indictable or non-indictable– subjected to the so-called "visual observation." (See Pl. Exh. F, 17:14-19, 27:1-7; Pl. Exh. H, 54:4-12.)" (emphasis added). *Id*. at 13.

This Court explained that *Davis* is " the District of New Jersey's strip search jurisprudence, under which the constitutionality of a strip search turns on the existence of reasonable suspicion that an arrestee is concealing weapons or contraband. See, e.g., *Davis v. City of Camden*, 657 F. Supp. 396, 399 (D.N.J. 1987)." *Id.* at 12. *Florence* is the most recent decision in our District consistent with precedent established by *Davis* and its progeny that reasonable suspicion must be articulated before strip searching non-indictable arrestees. *Davis v. City of Camden*, 657 F. Supp.

4

396 (D.N.J. 1987); *Roderique v Kovac* 1987 WL 17058 (DNJ);*O'Brien v. Borough of Woodbury Heights,* 679 F.Supp. 429 (D.N.J.1988);*Ernst v. Borough of Fort Lee*, 739 F.Supp. 220 (DNJ,1990); *DiLoretto v. Borough of Oaklyn*,744 F.Supp. 610 (DNJ,1990);*Florence v. Board of Chosen Freeholders of the Burlington County, et. al.,* 2008 WL 800970, (DNJ, 2008). This Court found that "...Davis did not prohibit blanket strip search policies; it simply requires them to be predicated on some application of the reasonable suspicion standard."*Florence*, at 27.

Defendants blatantly ignore established law requiring predication of reasonable suspicion as so well reasoned in this Court's March 20, 2008 decision and further ignoring this Court's admonishment of Defendants' Essex same incredible argument that the law in this District is not the law, to wit:

> "Frankly, the Court is uncertain of the point the Essex County Defendants are trying to make. If they are suggesting that the large number of violent offenders in their facility somehow obviates their need to comply with the law, they are mistaken. They are similarly mistaken if they believe that the absence of an opinion from the Court of Appeals casts doubt on the underlying legal principle that suspicionless strip searching is unlawful; *Davis* is an opinion of this Court and is therefore the law within this District." *Florence*, at 16.

In face of this Courts opinion consistent with Davis and its progeny, Defendants still argue (a) a 9th Circuit Court of Appeals holding binds our District and (b) medical necessity and gang violence prevention justify strip searching without first articulating a reasonable basis.

### i. A FOREIGN CIRCUIT COURT OF APPEAL DECISION DOES NOT TRUMP ESTABLISHED DISTRICT COURT LAW IN THIS DISTRICT

Decisions of the Court of Appeals for a given circuit are binding on the district courts within the circuit, but are not binding on courts in other circuits, whether at the appellate or district level. *Massaro v. United States Lines Co*., 198 F.Supp. 845 (D.Pa.1961), aff'd., 307 F.2d 299 (CA 3, 1962);*Villines v. Harris*, 487 F.Supp. 1278 (D.C.N.J., 1980). The law in this District establishes that reasonable suspicion must first be articulated before strip searching non-indictables. *Florence*, at 27. Thus, Defendants' supplemental letter filed September 11, 2008 that *Powell v. Barret*, 2008

U.S. App. Lexis 18907 (11th Cir. 9/4/08) Court of Appeals' decision is precedental in this District is as ludicrous as their argument that a decision that never happened should be precedental too. (See Section B herein).

Contrary to Defendants' flawed argument that any Court of Appeals decision should bind our District, the fact is that this District interpreted *Bell v. Wolfish* as requiring a balancing test against a citizens' rights and the prison's interests. *Davis*, supra. The balance established here is predicating reasonable suspicion before stripping someone's grandmother brought in for failure to pay a traffic ticket, or before stripping someone's Dad for failing to pay a fine.

### ii. DEFENDANTS' CAN NOT JUSTIFY STRIP SEARCHING BECAUSE THEY WANT TO DISCOVER GANG MEMBER TATTOOS OR MRSA MEDICAL PROBLEMS.  THIS  DISTRICT HOLDS THAT THERE MUST BE A BALANCING OF INTERESTS BETWEEN THE NON-INDICTABLE ARRESTEE  AND THE PRISON BY ARTICULATING REASONABLE SUSPICION BEFORE STRIP SEARCHING A NON-INDICTABLE.

The Law in this District mandates reasonable suspicion must be established before strip searching non-indictables. *Davis*, supra. *Davis* and its progeny considered a prison's security concerns and held that a balancing of the arrestees constitutional rights must be made against such security concerns. Courts in this District have found the balance under *Bell* tip in plaintiffs' favor that reasonable suspicion be the predicate which undermine Defendants' proposed justifications . Thus, Defendants MRSA and gang violence concerns do not negate the prison's responsibility to determine reasonable suspicion before strip searching a non-indictable. Defendants know they have this obligation to predicate reasonable suspicion as their own strip search form lists "reasonable suspicion" to be checked off in the two very specific instances that Defendants now deny they need reasonable suspicion:

> "_____REASONABLE SUSPICION THAT INDIVIDUAL IS CONCEALING
>     CONTRABAND OR WEAPON (MUST BE EXPLAINED BELOW)
> _____ REASONABLE SUSPICION THAT INDIVIDUAL IS SUFFERING FROM
>     A COMMUNICABLE DISEASE((MUST BE EXPLAINED BELOW)"
> (**Lask Cert. Exh. A, 9/22/08**)

6

That strip search form evidences that Defendants know the law and what they should do. It is a simple resolution to segregate the non-indictables from indictables and use their strip search forms properly, their computers to check who is non-indictable and indictable and use common sense to insure citizens are not indignified by exposing their naked bodies and genitals to strangers in a jail setting. It is incredible that we are in the 21st Century yet Defendants subject citizens to barbarian blanket strip searches of mothers who fail to pay a traffic ticket and Dads who did not pay a court fine.

As to Defendants feigned MRSA fears, a nose swab and a culture under laboratory conditions can determine MRSA (Lask Cert., 9/22/08). Strip Searching is not a medical means of determining MRSA. If MRSA is an issue, then Defendants should insure every arresstee's nose is swabbed upon intake and cultured. The nose swab would rectify the indignity of the unconstitutional blanket strip searches Defendants perform. Nonetheless, Defendants did not file an affidavit of a medical profesisonal to support their MRSA argument. They only make general statements and attach a sleuth of irrelevant articles that are inadmissible exhibits withoutthe proper affidavit. Also, all such documents were never provided during discovery in the past 3 years, and are as inadmissible for their failure to produce the same.

Mr. DiDonato's Exhibits to his Affidavit undermine his MRSA argument. His Exhibit A Pacer filing 130-3, at page 17 of 28 on Pacer states:

> "Intake Screening: All inmates undergoing intake medical screening and physical examinations should be carefully evaluated for skin infections."

His 31 pages of "Federal Bureau of Prisons Clinical Guidelines", dated August, 2005, regarding "Management of MRSA", filed as Pacer Document 130-5, at page 7, states that MRSA should be discovered as part of an arresstee's "medical screening". Only a medical professional can conduct a "medical screening". Jail Officers can not conduct a medical screening, and they certainly should not do so while strip searching arrestees. If that is their practice then Mr. DiDonato's Affidavit

certifies that Defendants Burlington permits Officers to practice medicine without a license to determine who may or may not have a medical condition called MRSA. By virtue of those facts, Defendants Burlington are liable for a class action by every arrestee and inmate put at risk by their admitted policy and custom of unlicensed prison officers practicing medicine by making medical determinations they are not qualified to make to the detriment of the prison population.

Mr. DiDonato's Exhibit B being Defendants internal policy Section 1127 further disproves his MRSA argument. Exhibit B states on page 2 of 8 that "The correctional **supervisor** (emphasis added) will be responsible to conduct a screening that the prisoner observed does not have any medical and/or psychological problems." Every one of Defendants' officers testified at depositions that the officers conduct the strip searches at issue, not a "correctional supervisor" (see Plaintiff's Briefs, 8/1/07 & 6/28/08).

The gang tattoo excuse is just as incredible as their MRSA story. The fact is it does not matter what Defendants want to do, the law is they must first establish reasonable suspicion before they do it. If they have reason to believe someone is part of a gang because of their look, conduct or something giving reasonable suspicion, then they need to call a supervisor, fill out their strip search form and conduct a proper strip search. Otherwise, they can not possibly have us believe the thousands of persons entering their facility for non-indictable traffic violations are each a suspected gang member mandating a strip search without cause. Moreover, again, there is no affidavit to support this generalized statement. Nevertheless, the fact is it is the converse. The thousands entering the facility on non-indictables are not gang members. There in fact are not even thousands of gang members in the area, no less the thousands as admitted in their facility during this class period. The balance this District established in *Davis* and its progeny accounts for the fact that prison security concerns are minimal when the nonviolent, non-indictable arrestee for a traffic violation is processed, and the constitutional right of that unobtrusive arrestee to avoid the indignity of a strip search during processing outweighs a security concern.

**D. ELEVENTH AMENDMENT IMMUNITY DOES NOT EXIST BECAUSE DEFENDANT IS A PRIVATELY INSURED COUNTY THAT SHALL PAY ITS OWN JUDGMENT, NOT INDEMNIFIED BY THE STATE**

Municipalities or counties are not entitled to qualified or absolute immunity in Section 1983 cases. *Owen v. City of Independence, Mo.,* 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980);*Chisolm v. McManion,* 275 F.3d 315, 322-23 (3dCir.2001). The Third Circuit made clear the following factors must be addressed:(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy, and the dominant factor is whether the state treasury would pay a judgment. *Id.* at 323 (citing *Fitchik v. New Jersey Transit"Rail Ops., Inc*., 872 F.2d 655 (3d Cir.1989); *Christy v. Pennsylvania Tpk. Comm'n,* 54 F.3d 1140 (3d Cir.1995)). The party claiming Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. Pennsylvania Turnpike Commission*, 54 F.3d 1140 (3d Cir. 1995).

Defendants never made its burden to prove Eleventh Amendment immunity exists. First and most important, they are not indemnified by the State in any way. A resulting judgment here will not be paid by the State but is the responsibility of the Defendant County. Defendants are **self insured** and privately insured as admitted in their FRCP 26 disclosure:

> "At the time of plaintiffs incarceration the County of Burlington and its employees were self-insured for all claims up to and including the amount of $200,000.00. Once the $200,000 self-insured retention is met, the County maintained $10 Million Dollars in General Liability, Law Enforcement Liability, Employee Benefits Liability and Police Official Liability insurance coverage with State National Insurance Company pursuant to Policy No. MDB 0266755." (**Lask Cert. Exh. D, 9/22/08**)

Defendants are an autonomous self and privately insured entity. Their website describes them as an incorporated body politic being "The official governing body for the County of Burlington" which has "both administrative and policy making powers." (**Lask Cert. Exh. E, 9/22/08**). Defendants as the county create and implement their own policies and procedures to operate their county prison.

By its own deliberate indifference to federal laws, Defendants' policy to blanket strip search without first articulating a reasonable basis makes it liable under Section 1983. *Davis v. City of*

9

*Camden*, 657 F.Supp. 396 (D.N.J.1987) (defendant county could be held liable under Section 1983 for its official adoption of an unconstitutional policy of strip searching persons in county jail even though that policy was mandated by state law). *Andrews v. Camden County*, 95 F. Supp.2d 217, 229, 230 (D.N.J. 2000) ("It is well established that in §1983 suits, a municipality may be held liable for not having in place a policy that is necessary to safeguard the rights of its citizens, or for failure to act where inaction amounts to deliberate indifference to the rights of persons affected.... [I]if defendants knowingly failed to enforce the requirements that a Medical Director be in place and that medical rounds be conducted daily to visit segregated prisoners, this is evidence of reckless disregard of a condition creating an unreasonable risk of violation of inmates' Eighth Amendment rights....").

As much as we should ignore the incredible, it can not be helped to point out to this Court Defendants' argument that since they are following state law then they are state agents cloaked with Eleventh Amendment immunity. That flailing presentation is proof in fact Defendants again make frivolous commentary in the form of argument because they have no real defense in law or fact.

E.  **QUALIFIED IMMUNITY DOES NOT EXIST FOR WARDEN COLE AS *DAVIS* AND ITS PROGENY ESTABLISHED SINCE 1985 THAT HIS CUSTOM & POLICY OF BLANKET STRIP SEARCHING WITHOUT REASONABLE SUSPICION IS UNCONSTITUTIONAL IN THIS DISTRICT**

Qualified immunity is analyzed using a two step process established by *Saucier v. Katz*, 533 U.S. 194 (2001). Under *Saucier*, we decide first whether the strip searches conducted by Defendants violate constitutional rights, then whether that right was clearly established at the time. To be clearly established, it " 'must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.' " *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Defendants' August 20, 2008 filings admit they have a policy and custom of strip searching everyone. Defendants' admit Defendants Cole's liability by their own citation at page 15 of their Brief, "Immunity is forfeited if the officer violates " established statutory or constitutional

law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982)." This District holds that the law prohibiting this strip search was clearly established since *Davis* in 1987. *Obrien v. Borough of Woodbury Heights*, 679 F.Supp. 429 (DNJ,1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341(1986). Thus, Defendant Cole as a reasonable official would understand that his blanket strip search policy during processing was unconstitutional given the law in this District, and the vintage of law at the time nationwide.

Finally, Defendants presentation of the unpublished decision *Smart v. Taylor* (D.N.J.,2008) is wholly misplaced. *Smart* did not involve the at bar issues of strip searching during arrestee processing. Smart involved an entirely different issue requiring an entirely different set of standards and laws-strip searching **after** an arrestee leaves a facility.

### III. CONCLUSION

For the forgoing reasons, Plaintiff requests this Honorable Court to grant summary judgment declaring unconstitutional Defendants' custom and policy of strip searching all non-indictable arrestees and a preliminary injunction against Defendants' continuing their strip searches and deny Defendants' cross-motion for summary judgment in its entirety. Pursuant to FRCP 56 (g), this Court must order Defendants to pay Plaintiff's reasonable expenses, including attorney's fees, incurred as a result of their false representations regarding the Gerber case, and hold the offending party or attorney in contempt.

Dated: September 22, 2008
      Newark, NJ

/s Michael V. Calabro
_____
MICHAEL V. CALABRO, ESQ.
SUSAN CHANA LASK, ESQ.
Attorneys for Plaintiff
Drafted by SUSAN CHANA LASK, ESQ.
466 Bloomfield Ave, Suite 200
Newark, New Jersey 07107
(973) 482-1085